Charles Edward SMITH, Appellant,

v.

Pamela Jean SMITH, Respondent.

No. 72556.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 2, 1998.

David D. Weltner, Bridgeton, for appellant.

Nathan S. Cohen, Eric B. Krauss, Clayton, for respondent.

CRANDALL, Judge.

Father, Charles Smith, appeals from the judgment of the trial court modifying a decree of dissolution of his marriage to mother, Pamela Smith. We affirm in part and reverse and remand in part.

The marriage of father and mother was dissolved by a decree of dissolution entered in February 1993. Although five children were born of the marriage, the original decree addressed custody of the three unemancipated children: mother was awarded custody of Angela and Daniel, born in January 1978 and September 1981, respectively; and father was awarded custody of Jonathan, born in March 1979. Father was ordered to pay monthly child support of $134.00 each for Angela and Daniel. At the time of the dissolution, father was employed by the United States Postal Service as a maintenance worker. In September 1996, mother filed a motion to modify and a motion for contempt.[1] In her motion to modify, she sought increased child support for all three children, since Jonathan has been living with her since May 1993; an order regarding college expenses for Angela; and an award of attorney's fees. Father filed his own motion to modify, seeking a determination that Jonathan and Angela were emancipated as well as a reduction in child support for Daniel.

The trial court held a hearing on the motions in April 1997. The evidence established that Angela was 19 years of age. Since July 1996, she had been living in an apartment with a cousin and brother. She was in her senior year of high school; and after her mother and Daniel moved out of the marital residence and into a home in a different

---

1. Mother did not appeal from the trial court's ruling on her motion for contempt, which was overruled.

school district, she had moved into an apartment within the school district so she could graduate from high school in June 1997. She worked about 25 hours per week at a job which paid about $7.00 per hour. She was accepted into a nearby private college, where the annual tuition was about $15,000.00. She testified that she did not make enough money to provide for her own needs.

Jonathan was 18 years of age. He had not attended high school for about 18 months. He held various jobs since leaving school. At the time of the hearing, he was unemployed and living in the apartment with Angela.

Mother testified that father ceased paying child support for Jonathan when Jonathan did not enroll in his sophomore year of high school in September 1995. Father also stopped paying child support for Angela in July 1996, when she moved out of her mother's home. Mother was employed and her gross earnings were about $354.00 to $374.00 per week.

Father testified that he had not worked since February 1997. At the time of the hearing he was on leave without pay from the United States Postal Service and was in the process of applying for disability. If he was found to be entitled to disability payments, he would receive benefits equal to 40 percent of his three highest-earning years of work. He had Crohn's disease. He testified extensively regarding the physical symptoms of that disease, including frequent incontinence. He sometimes had to leave work to change his clothing. He also detailed the seven or eight medications he took to relieve the various symptoms of his disease and their side effects. One side effect father suffered was bone demineralization, which resulted in pain and broken ribs. He stated that he did not want to undergo surgery for his Crohn's disease, because he was concerned that the disease could re-involve the entire colon, as it had in the past.

A physician, a gastroenterologist who treated father since 1988, testified by way of deposition, which was admitted into evidence. He stated that in his opinion father was disabled. He stated the only cure for father's condition was to remove the diseased section of his colon. Such surgery would necessitate father's wearing a colostomy bag and would not prevent the reappearance of the disease in another area of the gastrointestinal tract.

The trial court entered judgment modifying the decree of dissolution, the pertinent portions of which are discussed as follows. The court found that Angela and Daniel were not emancipated, but that Jonathan was. The court imputed income to father of $2,714.00 per month; and ordered father to pay $195.00 per month in child support directly to Angela, one-half the cost of a state-university education for Angela, $440.00 per month in child support for Daniel, and mother's attorney's fees.

Our review of the judgment of the trial court modifying a decree of dissolution is governed by the familiar principles of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. We will reverse a judgment because it is against the weight of the evidence with caution and with a firm belief that the judgment is wrong. *Rich v. Rich,* 871 S.W.2d 618, 622 (Mo.App. E.D. 1994).

In his first point, father contends the trial court erred in imputing monthly income to him of $2,714.00, an amount representing his gross income while he was working. He argues he was medically disabled and thus the proper amount of imputed income should have been his anticipated disability income, which was 40 percent of his gross income for his three highest-earning years of work or about $1,070.00 per month.

In calculating child support, trial courts have discretion to impute income to an underemployed or unemployed parent. *Gal v. Gal,* 937 S.W.2d 391, 397 (Mo.App. E.D. 1997). A parent may not escape responsibility to his or her family by deliberately limiting his or her work to reduce income. *Jensen v. Jensen,* 877 S.W.2d 131, 136 (Mo.App. E.D.1994). In order to avoid such a situation, a court may, in proper circumstances,

impute an income to a parent according to what that parent could earn by use of his or her best efforts to gain employment suitable to that parent's capabilities. *Id.* What constitutes the appropriate circumstances to impute income will depend on the facts and must be determined on a case-by-case basis. *Quackenbush v. Hoyt,* 940 S.W.2d 938, 943 (Mo.App.S.D.1997).

In the instant action, there is no indication that father voluntarily put himself in the position of reducing his income without justifiable explanation or that he acted in bad faith when he quit his job and applied for disability. The evidence was that father suffered from Crohn's disease for many years. The disease manifested itself with chronic symptoms, including incontinence, and had a serious and debilitating impact on his ability to perform his job. *Compare Oldfield v. Oldfield,* 767 S.W.2d 134 (Mo.App.1989) (court properly imputed income to mother where her "health problem" was a tennis elbow). Further, there was no evidence that father's medical condition was temporary.

 Mother contends that "a surgical procedure exists to alleviate [father's] symptoms and allow him to engage in full time employment." Yet, "[c]ourts do not interfere within the marital relationship to compel spouses to obtain employment which will generate the maximum possible income to support their children. Courts do not interfere within the marital relationship to mandate the employment which a spouse is required to take." *Jensen,* 877 S.W.2d at 137. Courts should not impute income where the record does not establish an attempt to evade parental responsibilities. *Id.*

Here, although father's treating physician testified that surgery was a cure for Crohn's disease, he also stated that surgery would not prevent the reoccurrence of the disease in another area of father's gastrointestinal tract and would necessitate father's wearing a colostomy bag at all times. He gave his opinion that father was disabled from working.

In this situation, it was improper for the trial court to impute income to father based on his ability to work full time. Father is not required to undergo a serious and invasive surgical procedure in order to maximize his earnings. Further, even if father had the operation, a complete recovery and the ability to earn the maximum amount of income to support his children by working full time are speculative.

The record did not reflect that father was attempting to evade his obligation to support his children by reducing his income. Although income can be imputed to father for the children's best interests, the amount of income attributed to him must be in his capacity to earn. *Keck v. Keck,* 820 S.W.2d 727, 729 (Mo.App.1991). The sum imputed to father by the trial court exceeded his expected ability to earn. While the court has broad discretion in imputing income to father, we are of the firm belief that the trial court's imputation of income in the amount of $2,714.00, an amount equal to what he earned when he was fully employed, was against the weight of the evidence. There was evidence before the court, however, as to father's anticipated income if he received disability. Father's first point is granted.

 In his second point, father asserts the trial court erred in declaring that Angela was not emancipated. We have reviewed the record on appeal with regard to this claim of error and find that the finding as to Angela's emancipation was supported by substantial evidence. No error of law appears. An opinion would have no precedential value. Point denied. Rule 84.16(b).

Father's remaining two points on appeal concern the trial court's orders pertaining to Angela's college expenses as well as mother's attorney's fees. In view of our holding under point one that the court imputed an improper amount of income to father, we remand for the trial court to reconsider these awards on the basis of father's income as determined by the court.

The awards of child support, college expenses for Angela, and attorney's fees are reversed and remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

AHRENS, P.J., and KAROHL, J., concur.