**In re the MARRIAGE OF Glen L. and Coleta J. FOSTER.**

**Glen L. Foster, Petitioner–Appellant,**

v.

**Coleta J. Foster, Respondent–Respondent.**

**No. SD 31851.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 31, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 22, 2013.

Cordelia F. Herrin, Donald L. Cupps, Cassville, MO, for Appellant.

Coleta J. (Foster) Rose, Pro Se.

NANCY STEFFEN RAHMEYER, J.

Glen L. Foster ("Husband") appeals the property designation of insurance proceeds and the property distribution in the judgment of dissolution. We find no error in the judgment and affirm it.

The parties were married in 2001 and separated five years later. The record reflects that there were hearings before the court on several occasions, including the transcripts we have been provided for hearings on March 6, 2008, and November 17, 2009. After the November 2009 hearing, the court entered what purported to be a judgment on January 29, 2010. Husband appealed from that judgment claiming that the trial court had improperly classified insurance proceeds as marital property, had erred in not dividing the debt which Husband incurred when he purchased a double-wide mobile home and installed it on the farm, and finally that the trial court erred in making a mathematical error in not giving Husband full credit for the $5,000 Wife received from the insurance proceeds. *Foster v. Foster* ("*Foster I*") 345 S.W.3d 332, 333 (Mo.App. S.D. 2011). This Court agreed that it was not clear whether the mobile home or the debt was divided in the decree and remanded for the trial court to consider additional evidence, including evidence of the source of funds used to purchase the mobile home. *Id.* at 334. The parties presented no further evidence as to property values. Despite this failure to present evidence, Husband now claims, in addition to his previous complaints, (1) that the values listed in the judgment are stale as two years passed between the original judgment and the judgment on appeal, and (2) the trial court erred in finding a value to the farm because there was no evidence of the value of the farm at the time of the marriage.

## Facts

At the time of the marriage, Husband owned 155 acres in Barry County; however, the parties incurred indebtedness in the amount of $92,000 shortly after the marriage. Additionally, substantial improvements in the amount of $30,000 increased the fair market value of the farm. During the pendency of the action, the home on the farm burned and a portion of the insurance proceeds, which resulted from a policy listed in the name of Husband and Wife, in the amount of $76,323.26 were used to pay the remaining mortgage. Husband kept the remainder of the insurance funds with the exception of $5,000 that he paid to Wife with the notation that it was in partial settlement for the divorce.

## Court Decision

The court found the land to be worth $303,000,[1] and awarded the property to Husband; however, the court found a marital interest of $122,000 in the land. The court found the value of a modular home, purchased by Husband after the fire for the farm, to be $82,908, and that Husband incurred marital debt in the amount of $66,221 for the purchase. The court used the purchase price minus the debt to ar-

---

1. The value of the land was the result of an appraisal and has not been contested on appeal.

rive at a net equity of $16,687, which was to be "divided 50/50 with each party to receive $8,343." After calculating the marital property minus the debts and crediting Husband $5,000 for the amount paid to Wife, the court ordered a property equalization sum in the amount of $80,286 to be paid to Wife.

## Analysis

■ Husband claims error in his first point in the finding that the insurance proceeds, which resulted in a reduction in the farm mortgage, were marital property. Although Husband acknowledges that the reduction of a mortgage may come from marital or nonmarital sources, Husband argues that under the source of funds doctrine the insurance proceeds were his separate property. In essence, he argues that the insurance proceeds simply replaced his nonmarital interest in the farm. Husband's argument is misplaced.

■ The policy was titled in both names, the premiums were paid with marital funds, and Husband and Wife were joint owners of the insurance policy at issue. *Foster I* at 333. The character of property is determined by the source of funds financing its purchase. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 824 (Mo. banc 1984). The parties, therefore, used marital funds to reduce the mortgage. Husband argues that the fact that the insurance proceeds check was made payable to both Husband and Wife does not "transmute the farm from separate to marital" but the trial court did not transmute the real property. At the time of the dissolution, the real estate that the insurance proceeds covered was titled in both of their names. The court found the property was not transmuted into marital property but was done with the intention to provide for distribution of the property to Wife should Husband pass away. Despite the trial court finding that the farm was nonmarital property, any marital property (i.e., insurance proceeds) can be used to increase its value and that increase is marital property. The trial court's determination that deeding the property into joint names did not transmute the farm into marital property in its entirety, however, has no bearing on the marital status of the insurance proceeds as previously discussed. "Any increase in the value of separate property is marital property if marital assets or material labor contributed to acquiring that increase." *Selby v. Selby,* 149 S.W.3d 472, 484 (Mo.App. W.D. 2004). The trial court did not err in finding that the $76,323.26 reduction in the farm mortgage was marital property. Point I is denied.

■ For an ease in analysis of the points, we will discuss Husband's third point, which claims there was a prejudicial two-year delay between the valuations of evidence presented at trial in November 2009 and the distribution provided by the December 2011 Amended Judgment. "As a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial." *Schubert v. Schubert,* 366 S.W.3d 55, 72 (Mo.App. E.D.2012)(internal quotations omitted). In this matter, however, after the case was remanded by this Court, Husband never sought to introduce evidence of any change in the value of the real or personal property from the values listed from the first trial. Husband and Wife bore an equal burden to present evidence as to the value of the property. *Nelson v. Nelson,* 195 S.W.3d 502, 507 (Mo.App. W.D.2006). Husband failed to meet his burden in producing evidence, thus, he cannot now argue that the trial court erred in using stale values. *See Rosencrans v. Rosencrans,* 87 S.W.3d 429, 431 (Mo.App. S.D.2002)(where property values were fifteen months old

when the judgment was entered, nothing in the record showed that the husband's counsel sought to introduce evidence of any change in property values after the original hearing date and the delay resulted from husband's own actions). Once again, a party may not invite error and then complain on appeal that the error invited was in fact made.

It is Husband who claims error in the stale values and yet produced no evidence of a different value while the case was pending before the trial court. The problem with Husband's point and argument is that the parties were given an opportunity to present evidence of updated values. We do not assume that those values were out of date. If Husband disagreed with the values from the first hearing, he should have provided evidence to the trial court that contradicted those findings.

Moreover, Husband has not shown how he was prejudiced by the trial court's use of allegedly stale valuations. *See McCallum v. McCallum*, 128 S.W.3d 62, 67 (Mo. App. E.D.2003)(noting that factors to consider in determining the materiality of the error are the lapse in time and the type of property involved, particularly where the evidence does not indicate clearly that the value of the property is volatile, the party challenging the valuation must allege prejudice). Husband failed to specify which property, if any, "changed drastically in value" from the November 17, 2009 trial. *Poole v. Poole*, 977 S.W.2d 940, 943–44 (Mo.App. S.D.1998)(denying father's claim because he failed to show how he was prejudiced by the trial court's use of stock valuations that were over one year old). We cannot say as a matter of law that the court erred in entering those values even if they are the same as were entered after the earlier hearing. *See In re Marriage of*

*Wood*, 262 S.W.3d 267, 274 (Mo.App. S.D. 2008)(where delay between the date of trial and the date of judgment is not, in itself, grounds for reversal; a party must show that he or she was prejudiced as a result of the delay). Point III is denied.

■ Husband's second and fourth points are controlled by our holding in Point I. In his second point, Husband claims that the court erred in finding any marital equity in the double-wide mobile home that he acquired after the fire. The court calculated the purchase price and subtracted the loan to arrive at a value of $16,687 in marital equity. Husband claims that the installment contract is not evidence of value, but just evidence of where Husband had borrowed the money to purchase the mobile home. Husband further claims there was no evidence of the double-wide's value at the date of the trial. After remand, Husband did not provide any updated value to the double-wide but now complains that the court had insufficient evidence of its value.

■ First, we will not convict the trial court of error when the party who had the burden and the opportunity to present evidence of the property failed to provide the trial court with such evidence. Husband purchased the property, he was an owner and was entitled to give an estimate of the value, or he could have provided other evidence of value. He simply chose to put on no evidence of the value prior to or after the remand[2] and then found fault with the trial court for using the installment contract which Husband claims had been submitted by the parties only as evidence that Husband borrowed money to purchase the double-wide mobile home.

---

**2.** He was certainly on notice that this Court found merit to his claim that there was insufficient evidence of the value of the property when he raised that issue on appeal.

Second, the trial court may receive any relevant evidence on the issue of valuation. *Jones v. Jones*, 277 S.W.3d 330, 337 (Mo. App. W.D.2009). The court was free to use the installment contract as evidence of the value of the mobile home, particularly in view of Husband's failure to present evidence of different value. The purchase price can be competent evidence of the fair market value, *if not too remote in time. Held v. Held*, 896 S.W.2d 709, 711 (Mo. App. E.D.1995); *see also In re Marriage of Rogers*, 300 S.W.3d 567, 575 (Mo.App. S.D.2009)(finding purchase price can be utilized in a trial court's calculation if property was purchased in relatively close proximity to the time of the marriage); *Spradling v. Spradling*, 959 S.W.2d 908, 913 (Mo.App. S.D.1998)(finding purchase price of real estate may be considered competent evidence of the fair market value); *Brennan v. Brennan*, 955 S.W.2d 779, 783 (Mo.App. E.D.1997)(affirming the court's valuation based on purchase price where there was no evidence to support a finding that the purchase price inaccurately reflected the fair market value).

During the hearing on November 17, 2009, Husband testified the mobile home was purchased in June 2008,[3] for $85,000, and had indebtedness of $64,540. That certainly is within the range of the approximate $17,000 that the court found as the value. If Husband's contention is that the mobile home was worth more than the installment contract indicates he paid for the mobile home, we fail to understand how he is prejudiced. He, in essence, would be receiving an asset worth more than the value shown for the dissolution. Here, there was not a significant lapse in time between the purchase and the initial trial valuation, and more importantly, after the remand, Husband failed to present evidence as to how the mobile home's value had fluctuated such that the purchase price was no longer an accurate reflection of the fair market value. *See Brennan*, 955 S.W.2d at 783 (affirming the court's valuation based on purchase price where there was no evidence to support a finding that the purchase price inaccurately reflected the fair market value). The court did not commit error by using the purchase price in determining the equity of the mobile home, particularly in light of the absence of any evidence disputing the value. Point II is denied.[4]

 Husband contends in his fourth point that the court erred in its calculation of the farm under the source of funds formula, as stated in *In re Marriage of Herr*, 705 S.W.2d 619 (Mo.App. S.D.1986). Specifically, Husband appears to claim that the court had no evidence of the amount of equity in the farm at the time of the marriage and, therefore, the court could not calculate the nonmarital contribution and ultimately the marital contribution per the formula. Once again, Husband is attempting to fault the trial court for his failure to present evidence on the issue of the value of the property at the time of the marriage. Husband was asked detailed questions about almost every item of personal property and had arrived at values for property he had purchased before the marriage and after the marriage, but he put forth no value for the value of the farm at the time of the marriage. There was, however, evidence that shortly after the marriage the property was refi-

**3.** The date was left blank on the installment contract.

**4.** We are aware that Husband may have decided on a trial strategy of refusing to provide a separate value and hoping the court would just add it to the value of the acreage. As noted in *Foster I*, the court was free to consider the mobile home separate from the acreage. *Foster I,* at 334.

nanced for $92,000 and that entire amount was paid for during the marriage. The court was within its discretion to conclude that the farm had no equity and was worth the amount of indebtedness. Husband presented no evidence to contradict that conclusion.[5] Point IV is denied.

In his fifth point, Husband claims mathematical calculation error because of the $5,000 that Husband paid to Wife during the pendency of the proceedings. Husband gave Wife $5,000 from the insurance proceeds but noted it was in partial payment for the divorce. Husband's point has no merit for several reasons. First, as we have already determined, it was not error to designate the proceeds from the insurance policy as marital property. Husband received and spent the insurance proceeds in the amounts of $12,000, $31,000, $2,500, and $4,800. Wife received only $5,000 from these funds as a "partial settlement" for the dissolution.

Furthermore, the property remained marital property until there was a court-ordered dissolution or a "valid written agreement" of the parties. *Preston v. Preston,* 189 S.W.3d 685, 688–89 (Mo.App. W.D.2006). There was no valid written agreement and a physical division of the property was not binding upon the court. The court was not obligated to credit Husband with any amount, thus, it was not error to subtract any sum from the amount Husband was to pay Wife prior to the equalization award. Husband has not contended that the overall property distribution was inequitable. *See In re Marriage of Altergott,* 259 S.W.3d 608, 620–21 (Mo.App. S.D.2008) (finding calculation error from misapplication of the law was not prejudicial to husband); *Calhoun v. Calhoun,* 156 S.W.3d 410, 416–18 (Mo.App. S.D.2005)(holding wife was not prejudiced by the trial court's refusal to consider the tax consequences of assets awarded to her in part because it did not affect the overall property distribution). Point V is denied.[6]

The judgment is affirmed.

GARY W. LYNCH, P.J. and WILLIAM W. FRANCIS, JR., J., concur.

---

5. That would make the entire $303,000 marital property; thus, Husband is not prejudiced in his claim that the court incorrectly calculated the marital and nonmarital interests. He was awarded a $303,000 asset at a value of $122,000. Husband further makes no complaint that the property division was not equitable. A division of marital property does not need to be an equal division; it must only be fair and equitable given the circumstances of the case. *Hight v. Hight,* 314 S.W.3d 874, 877 (Mo.App. S.D.2010).

6. Wife filed a request for attorney fees on appeal. "Determination of a request for attorney fees in a dissolution action falls within the authority of the trial court in that the trial court does not lose jurisdiction to rule on such motions even if it withholds ruling until after resolution of an appeal." *Keller v. Keller,* 224 S.W.3d 73, 83 (Mo.App. S.D.2007). Wife's request for attorney fees is denied without prejudice to the filing of the request in the trial court.