

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| VIRGINIA G. ECKELKAMP, | ) | No. ED108437 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Gasconade County |
| vs. | ) | |
| | ) | Honorable Robert D. Schollmeyer |
| GARY L. ECKELKAMP, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 29, 2020 |

## Introduction

Gary L. Eckelkamp ("Husband") appeals the trial court's judgment dissolving his marriage to Virginia G. Eckelkamp ("Wife") and dividing property. In Point One, Husband argues the trial court erred in dividing marital assets for which there was no evidence of current valuations. In Point Two, Husband posits the trial court erred in precluding him from introducing evidence to rebut the presumption of marital property. Because Husband failed to meet his evidentiary burden to present evidence of current property valuations to the trial court, Husband may not now contest the staleness of the valuations on appeal. Therefore, we deny Point One. Because Husband failed to make an offer of proof as to non-marital property, and the record insufficiently preserves his point for review, we dismiss Point Two. Accordingly, we affirm the judgment of the trial court.

## Factual and Procedural History

Husband and Wife married on March 8, 1997.  Husband and Wife had one child, who is now emancipated.  Wife petitioned to dissolve her marriage to Husband on May 22, 2018.

The dissolution action proceeded to trial on September 26, 2019.  Regarding the division of property, Wife introduced evidence of various properties to be divided, including investments, stocks, retirement accounts, pensions, and annuities.  Wife testified that the exhibits contained the most recent valuations she had available but acknowledged that not all of the valuations were current.  In particular, Wife submitted a statement for Ameren stock (the "Ameren stock") from April 2019 showing a value of $472,047.16, as well as a more recent but unclearly dated statement listing a value of $486,179.92.  Wife testified that the Ameren stock had been in joint names with she and her Husband for nine to ten years.

At several points during trial, Husband sought to introduce testimony showing that he owned separate property inherited from his father, particularly the Ameren stock.  Prior to trial, in response to Wife's discovery interrogatory, Husband affirmatively stated he was not claiming the existence of any separate, non-marital property.  The trial court repeatedly sustained Wife's objections to testimony about whether Husband had inherited property from his father, reasoning that Husband was bound by his interrogatory response that he was not claiming any non-marital property.  Following the objections being sustained, the trial court invited Husband to make an offer of proof for evidence of his ownership of separate, non-marital property.  Husband declined to do so.

At the conclusion of trial, the trial court stated it would hold the evidence open to get current values for several accounts.  Following trial, neither Husband nor Wife submitted additional evidence to the trial court regarding current values.  After four weeks, the trial court entered its judgment on October 24, 2019, dissolving the parties' marriage and allocating the

2

parties' marital property and marital debt based upon the evidence presented. The trial court awarded Wife the full $486,179.92 from the most recent Ameren stock statement, awarded Husband the full amount of a Bank of Washington CD and Annuity, and evenly split the other accounts for pension, stocks, and annuity, noting that those values would be determined on the date of distribution. The trial court entered its amended judgment on October 29, 2019. Husband now appeals.

## Points on Appeal

Husband raises two points on appeal. Point One asserts the trial court erred in dividing marital assets in the absence of evidence of current values. Point Two argues the trial court erred in failing to allow Husband to introduce evidence regarding non-marital property for purposes of rebutting the presumption of marital property.

## Discussion

### I.     **Point One—Currentness of Property Valuations**

In his first point on appeal, Husband focuses on the lack of evidence as to current values for many of the divisible assets.

### A.     Standard of Review

We will affirm the judgment in a court-tried dissolution proceeding so long as the judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Fike v. Fike, 509 S.W.3d 787, 793 (Mo. App. E.D. 2016) (internal citations omitted). "We view the evidence most favorably to the result, disregard contrary proof, assume all fact issues were resolved in favor of the judgment entered, and defer to the trial court even if the record might support a different conclusion." Beecher v. Beecher, 417 S.W.3d 868, 869 (Mo. App. S.D. 2014) (internal citation omitted). "The party

3

challenging the dissolution decree has the burden of demonstrating error." Fike, 509 S.W.3d at 793 (internal quotation omitted). Even where a trial court erred in failing to ensure a reasonable proximity between the date of valuation and the date of distribution of marital assets, we will only reverse the judgment "when the error is material—that is, there must be facts in the record from which potential prejudice reasonably could be inferred and each case is therefore fact specific." Schubert v. Schubert, 366 S.W.3d 55, 73 (Mo. App. E.D. 2012) (internal quotation omitted); Meier v. Meier, 306 S.W.3d 692, 698 (Mo. App. E.D. 2010) (internal citation omitted).

B.    Analysis

Because Missouri law directs a trial court in a dissolution proceeding to divide marital property in such proportions as the trial court deems just, taking into consideration the current financial situations of the parties, the fair and equitable division of property requires evidence of current property valuations. See Section 452.330;[1] Meier, 306 S.W.3d at 697 (internal citations omitted). "As a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial." In re Marriage of Foster, 391 S.W.3d 500, 503 (Mo. App. S.D. 2013) (quoting Schubert, 366 S.W.3d at 72); see also Fike, 509 S.W.3d at 794 (citing Taylor v. Taylor, 736 S.W.2d 388, 391 (Mo. banc 1987)). Valuation of property should be reasonably proximate to the date of division because "[m]arket conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa." Wright v. Wright, 1 S.W.3d 52, 58 (Mo. App. W.D. 1999) (quoting Morgan v. Ackerman, 964 S.W.2d 865, 869 (Mo. App. E.D. 1998)); see also Fike, 509 S.W.3d at 794 (quoting McCallum v. McCallum, 128 S.W.3d 62, 66–67 (Mo. App. E.D. 2003)) ("For example, a nine-month gap between evidence and judgment as to the value of

---

[1] All Section references are to RSMo (2016), unless otherwise noted.

the marital home may have a negligible effect on the property division, whereas a nine-month gap in valuing stocks traded on the open market could be extremely unreliable.").

Importantly, both parties in a dissolution proceeding equally bear the burden to produce evidence of current property valuations. Foster, 391 S.W.3d at 503 (internal citation omitted); Wright, 1 S.W.3d at 57 (internal citation omitted). In reviewing a point on appeal challenging the staleness of the property values in the trial court's judgment distributing property, "[w]e will not convict a trial court of error when a litigant with the opportunity and burden to show current value failed to offer such evidence." Beecher, 417 S.W.3d at 871; Foster, 391 S.W.3d at 503.

Here, Husband alleges that Wife's evidence concerning the valuations of property presented at trial was stale and outdated, and thus the trial court's division of property using those valuations was prejudicially erroneous. Without providing any evidence of contrary valuations to the trial court or to this Court on appeal, Husband contends Wife's evidence as to the value of the Ameren stock and various other accounts involving stocks, annuities, and pensions, ranging between six months to two years old at the time of trial, were not sufficiently current to support the trial court's judgment. However, Missouri law holds both parties accountable for the production of evidence of current valuations at a dissolution proceeding, and Husband cannot now complain about stale valuations when he had the burden—and multiple opportunities—to present current valuation evidence but declined to do so. See Beecher, 417 S.W.3d at 871 (holding that the husband produced no evidence of property valuations to the trial court and thus could not argue on appeal that the trial court erred in using over two-year-old values); Foster, 391 S.W.3d at 503 (same); see also Fike, 509 S.W.3d at 795 (denying stale-valuation claim where the husband did not present any evidence showing the values of the

5

marital home, mortgages, or investment accounts had significantly changed between trial and distribution eight months later).

Husband's reliance on Wright is unavailing. Notably, in finding that the appellant was not precluded from challenging the property valuations on appeal despite not having offered evidence on the matter, Wright deviated from precedential authority in In re Marriage of Julian, 868 S.W.2d 182 (Mo. App. E.D. 1994), which emphasized that because both parties carry an evidentiary burden, "a party waives any objection to the division of marital property as being unjust and inequitable for failure to value it at the time of trial, unless he or she presented evidence on this issue." Wright, 1 S.W.3d at 59 (citing Julian, 868 S.W.2d at 186–87). Furthermore, more recent case law unambiguously recognizes the preclusive effect of the evidentiary burden on the complaining party on appeal. See Beecher, 417 S.W.3d at 871 ("We will not convict a trial court of error when a litigant with the opportunity and burden to show current value failed to offer such evidence."); Foster, 391 S.W.3d at 503 ("Husband failed to meet his burden in producing evidence, thus, he cannot now argue that the trial court erred in using stale values."). Because Husband attempts to assign error for a lack of evidence to which he neither objected nor offered alternatives, we will not find reversible error in the trial court's judgment. See Beecher, 417 S.W.3d at 871. Point One is denied.

## II. Point Two—Exclusion of Non-Marital Property Evidence

In Point Two, Husband asserts the trial court abused its discretion in excluding evidence regarding separate, non-marital property.

### A. Standard of review

"The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." Mitchell v. Kardesch, 313 S.W.3d 667, 674–75

6

(Mo. banc 2010) (quoting Nelson v. Waxman, 9 S.W.3d 601, 603 (Mo. banc 2000)).  We will not reverse a trial court's exercise of its broad discretion in evidentiary rulings unless its judgment "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration."  Id. at 675 (quoting State v. Freeman, 269 S.W.3d 422, 426–27 (Mo. banc 2008)).  Further, a party must demonstrate prejudice to warrant reversal for evidentiary error.  Id. (citing State v. Reed, 282 S.W.3d 835, 837 (Mo. banc 2009)).

B.      Analysis

In response to Husband's claim of error in the exclusion of evidence of non-marital property, Wife counters that Husband failed to preserve the point for review because he did not make an offer of proof for the excluded evidence.

We generally decline to review a point challenging a trial court's exclusion of evidence unless the proponent of the excluded evidence preserved the point for appeal by having made a specific and definite offer of proof before the trial court.  Calzaretta v. Willard, 391 S.W.3d 488, 493 (Mo. App. S.D. 2013) (quoting Frank v. Envtl. Sanitation Mgmt., Inc., 687 S.W.2d 876, 883–84 (Mo. banc 1985)).  The proponent of the excluded evidence bears the burden of making an offer of proof to the trial court indicating: "(1) what the proffered evidence would be; (2) its object and purpose; and (3) all the facts necessary to establish its relevance and admissibility."  Menschik v. Heartland Reg'l Med. Ctr., 531 S.W.3d 551, 562 (Mo. App. W.D. 2017) (internal quotation omitted).  "The purpose of making such an offer is to inform the trial court about the content of the proffered evidence and to allow an appellate court to assess the prejudicial effect of the exclusion."  Id. (internal quotation omitted).  Failure to make an offer of proof preserves nothing for review and requires us to dismiss the point.  Payne v. Fiesta Corp., 543 S.W.3d 109, 123 (Mo. App. E.D. 2018); Menschik, 531 S.W.3d at 562 (internal citation omitted).

7

Here, Husband concedes he failed to make an offer of proof as to the excluded evidence of non-marital property despite the explicit invitation to do so by the trial court. Nevertheless, Husband posits that evidence of his inheritance of the Ameren stock from his deceased father is so clearly relevant to whether the Ameren stock should be considered separate or marital property that we should consider his point preserved absent an offer of proof. However, whether we will overlook the offer-of-proof requirement is not solely a test of relevance.

The Supreme Court of Missouri carved out a limited exception to the offer-of-proof requirement in State Highway Comm'n v. Ne. Bldg. Co., 421 S.W.2d 297 (Mo. 1967). Calzaretta, 391 S.W.3d at 493. "This narrow exception recognizes that the purpose behind the offer of proof is to insure that the trial court has a clear understanding of the evidence it rules upon and that the appellate court has a specific record to review." Hawkinson Tread Tire Serv. Co. v. Walker, 715 S.W.2d 335, 336 (Mo. App. E.D. 1986). To come within the exception to the offer-of-proof requirement, the evidence must satisfy the following three requirements: (1) the record must show a complete understanding of the excluded testimony; (2) the objection must be to a category of evidence rather than to specific testimony; and (3) the record must show the evidence would have helped its proponent. Payne, 543 S.W.3d at 123 (internal citations omitted) (finding an offer of proof was necessary to have preserved a point appealing the exclusion of past medical bills and lost wages because there was incomplete understanding of the evidence as nothing was offered in the record and no foundation was laid for its relevance). For example, the offer-of-proof exception has been applied to evidence of abuse in a custody dispute where the appellant had been attempting to testify to alleged acts of assault by the custody-seeking parent occurring outside the child's presence. KRP ex rel. Brown v. Penyweit, 219 S.W.3d 829, 837 (Mo. App. W.D. 2007); cf. Peace v. Peace, 31 S.W.3d 467, 472 (Mo. App. W.D. 2000)

(explaining that when the best interests of a child are at stake, courts prefer to address the merits of an issue rather than resolve it on a technical rule violation).

The record in this case is simply inadequate for appellate review of Husband's point in light of the first and third elements of the offer-of-proof exception. See Payne, 543 S.W.3d at 123. Based on the paucity of the record at trial, we cannot speculate whether Husband's inheritance of the Ameren stock during the marriage is alone sufficient to rebut the presumption of marital property. See Cule v. Cule, 457 S.W.3d 858, 865 (Mo. App. E.D. 2015) (noting all property acquired subsequent to a marriage is statutorily presumed marital property, but a spouse can rebut the presumption by presenting clear and convincing evidence that the property falls within one of the categories provided in Section 452.330.2, including that the spouse acquired the property by gift, bequest, devise, or descent.). Importantly, while the trial court sustained objections to testimony that Husband inherited the Ameren stock following his father's death, the record clearly shows Husband added Wife's name to the Ameren stock during their marriage, placing the shares in their joint names. See id. at 865 ("[P]lacing separate property into the joint names of both spouses creates a presumption that the property has been transmuted into marital property." (internal quotation omitted)). Husband's counsel's explanation as to what the excluded evidence would have contributed to the trial court is that "between Melton Machine threatening to sue him, and, you know, trying to keep the marriage together, it can at least be something the Court consider why he put the [W]ife's name on assets that he could have kept separate." See id. ("Whether a spouse intended to make a valid gift [by putting the property in joint names] is a question of fact for the trial judge to determine, based on the facts and circumstances connected with the transaction." (internal citation omitted)). Had the stock remained separately titled in Husband's name during the marriage, we would be inclined to

9

apply the exception since that fact would provide the trial court with a clear understanding of the issue relating to the status of the property. However, given the fact that the Ameren shares were jointly titled during the marriage, we are not persuaded the record amply reflects a sufficient understanding of what the evidence would have been as to the non-marital character of the Ameren shares or how the evidence would have rebutted the presumption of marital property. An offer of proof by Husband could have aided trial court's understanding and consideration of how the jointly titled shares of Ameren stock might nevertheless have remained Husband's separate property. Indeed, that was clearly the purpose of the trial court's invitation to Husband to make an offer of proof. See Payne, 543 S.W.3d at 123; Menschik, 531 S.W.3d at 562. Thus, Husband's failure to make an offer of proof as to non-marital property precludes our review of Point Two.[2] See Payne, 543 S.W.3d at 123; Menschik, 531 S.W.3d at 562. Point Two is dismissed.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

---

[2] We recognize the potential merits of Husband's contention that the trial court should not have sustained Wife's objections on the specific basis that Husband was bound by his interrogatory response claiming no separate property. Generally, "answers to interrogatories constitute admissions, although a party is not conclusively bound by them." Ragland Mills, Inc. v. Gen. Motors Corp., 763 S.W.2d 357, 358 (Mo. App. S.D. 1989) (citing Smith v. Trans World Airlines, Inc., 358 S.W.2d 91, 94–96 (Mo. App. K.C. 1962)). "[A]dmissions made in the course of other types of trial preparation activities, such as depositions or interrogatory answers, or in superceded pleadings, can be used as evidentiary admissions, but they do not constitute binding judicial admissions." Peace, 31 S.W.3d at 471 (internal citations omitted). "The trier of fact has discretion to determine whether statements are admissions and the weight and value to be accorded them." McClanahan v. Deere & Co., 648 S.W.2d 222, 228 (Mo. App. S.D. 1983) (internal citation omitted). Notwithstanding the trial court's reasoning that Husband was bound by his interrogatory response as an admission rendering evidence of non-marital property irrelevant, Husband bore the burden to preserve the claim for review in the record. His failure to do so fatally impairs our review. See Payne, 543 S.W.3d at 123; Menschik, 531 S.W.3d at 562.

10